IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF VIRGINIA

Richmond Division

DANGELETTE D.,[1]
    Plaintiff,

v.                                               Civil No. 3:19cv358 (DJN)

ANDREW M. SAUL,[2]
Commissioner of Social Security,
    Defendant.

**MEMORANDUM OPINION**

On February 16, 2016, Dangelette D. ("Plaintiff") applied for Social Security Disability

Benefits ("DIB"), alleging disability from asthma, hyperesthesia allodynia, bursitis,

musculoskeletal nerve damage, mental stress, depression and anxiety, with an alleged onset date

of June 24, 2015.  The Social Security Administration ("SSA") denied Plaintiff's claim both

initially and upon reconsideration.  Thereafter, an Administrative Law Judge ("ALJ") denied

Plaintiff's claim in a written decision and the Appeals Council denied Plaintiff's request for

review, rendering the ALJ's decision as the final decision of the Commissioner.

Plaintiff now seeks judicial review of the ALJ's decision pursuant to 42 U.S.C. §405(g),

arguing that the ALJ erred by:  (1) failing to account for the extent to which Plaintiff could

---

[1]    The Committee on Court Administration and Case Management of the Judicial
Conference of the United States has recommended that, due to significant privacy concerns in
Social Security cases, federal courts should refer to claimants only by their first names and last
initials.

[2]    On June 4, 2019, the United States Senate confirmed Andrew M. Saul to a six-year term
as the Commissioner of Social Security.  Pursuant to Federal Rule of Civil Procedure 25(d),
Commissioner Saul should be substituted for former Acting Commissioner Nancy A. Berryhill
as the defendant in this matter.

perform her activities of daily living in discrediting Plaintiff's subjective complaints of pain; and, (2) failing to consider Plaintiff's ability to sustain work-related functions in crafting Plaintiff's residual functional capacity ("RFC"). (Pl.'s Mot. Summ. J. & Br. Supp. Thereof ("Pl.'s Br.") at 4-6.) This matter now comes before the Court on the parties' cross motions for summary judgment, rendering the matter ripe for review.[3] For the reasons set forth below, the Court DENIES Plaintiff's Motion for Summary Judgment (ECF No. 11), GRANTS Defendant's Motion for Summary Judgment (ECF No. 12) and AFFIRMS the final decision of the Commissioner.

## I. PROCEDURAL HISTORY

On February 16, 2016, Plaintiff filed an application for DIB, with an alleged onset date of June 24, 2015. (R. at 76-77.) The SSA denied Plaintiff's claim initially on April 21, 2016, and again upon reconsideration on October 31, 2016. (R. at 99, 109.) At Plaintiff's written request, the ALJ held a hearing on February 21, 2018. (R. at 30-75.) On July 3, 2018, the ALJ issued a written opinion, denying Plaintiff's claim and concluding that Plaintiff did not qualify as disabled under the Act, because she could perform jobs existing in significant numbers in the national economy. (R. at 14-25.) On March 18, 2019, the Appeals Council denied Plaintiff's request for review, rendering the ALJ's decision as the final decision of the Commissioner subject to review by his Court. (R. at 2-4.)

---

[3] The administrative record in this case remains filed under seal, pursuant to E.D. Va. Loc. R. 5 and 7(C). In accordance with these Rules, the Court will endeavor to exclude any personal identifiers such as Plaintiff's social security number, the names of any minor children, dates of birth (except for year of birth), and any financial account numbers from its consideration of Plaintiff's arguments, and will further restrict its discussion of Plaintiff's medical information to only the extent necessary to properly analyze the case.

## II.    STANDARD OF REVIEW

In reviewing the Commissioner's decision to deny benefits, a court "will affirm the Social Security Administration's disability determination 'when an ALJ has applied correct legal standards and the ALJ's factual findings are supported by substantial evidence.'" *Mascio v. Colvin*, 780 F.3d 632, 634 (4th Cir. 2015) (quoting *Bird v. Comm'r of Soc. Sec. Admin.*, 699 F.3d 337, 340 (4th Cir. 2012)). Substantial evidence requires more than a scintilla but less than a preponderance and includes the kind of relevant evidence that a reasonable mind could accept as adequate to support a conclusion. *Hancock v. Astrue*, 667 F.3d 470, 472 (4th Cir. 2012); *Craig v. Chater*, 76 F.3d 585, 589 (4th Cir. 1996). Indeed, "the substantial evidence standard 'presupposes . . . a zone of choice within which the decisionmakers can go either way, without interference by the courts. An administrative decision is not subject to reversal merely because substantial evidence would have supported an opposite decision.'" *Dunn v. Colvin*, 607 F. App'x. 264, 274 (4th Cir. 2015) (quoting *Clarke v. Bowen*, 843 F.2d 271, 272-73 (8th Cir. 1988)). To determine whether substantial evidence exists, the court must examine the record as a whole, but may not "'undertake to re-weigh conflicting evidence, make credibility determinations, or substitute [its] judgment for that of the [ALJ].'" *Hancock*, 667 F.3d at 472 (quoting *Johnson v. Barnhart*, 434 F.3d 650, 653 (4th Cir. 2005)). In considering the decision of the Commissioner based on the record as a whole, the court must take into account "'whatever in the record fairly detracts from its weight.'" *Breeden v. Weinberger*, 493 F.2d 1002, 1007 (4th Cir. 1974) (quoting *Universal Camera Corp. v. N.L.R.B.*, 340 U.S. 474, 488 (1951)). The Commissioner's findings as to any fact, if substantial evidence in the record supports the findings, bind the reviewing court to affirm regardless of whether the court disagrees with such findings. *Hancock*, 667 F.3d at 472. If substantial evidence in the record does not support the

3

ALJ's determination or if the ALJ has made an error of law, the court must reverse the decision. *Coffman v. Bowen*, 829 F.2d 514, 517 (4th Cir. 1987).

SSA regulations set forth a five-step process that the agency employs to determine whether disability exists. 20 C.F.R. § 404.1520(a)(4); *see Mascio*, 780 F.3d at 634-35 (describing the ALJ's five-step sequential evaluation). To summarize, at step one, the ALJ looks at the claimant's current work activity. § 404.1520(a)(4)(i). At step two, the ALJ asks whether the claimant's medical impairments meet the regulations' severity and duration requirements. § 404.1520(a)(4)(ii). Step three requires the ALJ to determine whether the medical impairments meet or equal an impairment listed in the regulations. § 404.1520(a)(4)(iii). Between steps three and four, the ALJ must assess the claimant's RFC, accounting for the most that the claimant can do despite her physical and mental limitations. § 404.1545(e). At step four, the ALJ assesses whether the claimant can perform her past work given her RFC. § 404.1520(a)(4)(iv). Finally, at step five, the ALJ determines whether the claimant can perform any work existing in the national economy. § 404.1520(a)(4)(v).

## III.    THE ALJ'S DECISION

On February 21, 2018, the ALJ held a hearing during which Plaintiff (represented by counsel) and a vocational expert ("VE") testified. (R. at 30-75.) On July 3, 2018, the ALJ issued a written opinion, finding that Plaintiff did not qualify as disabled under the Act. (R. at 11-25.)

The ALJ followed the five-step evaluation process established by the Social Security Act in analyzing Plaintiff's disability claim. (R. at 16-25.) At step one, the ALJ found that Plaintiff did not engage in substantial gainful activity between her alleged onset date and her date last insured, December 31, 2016. (R. at 16.) At step two, the ALJ determined that Plaintiff suffered

from the following severe impairments: reflex sympathetic dystrophy of the right lower extremity, venous insufficiency, degenerative disc disease of the lumbar spine, adhesive capsulitis of the right shoulder and obesity. (R. at 16.) At step three, the ALJ found that Plaintiff did not have an impairment or combination of impairments that met or medically equaled the severity of one of the listed impairments. (R. at 17.)

In assessing Plaintiff's RFC, the ALJ found that Plaintiff could perform light work as defined in 20 C.F.R. § 404.1567(b) with additional limitations. (R. at 19.) Specifically, the ALJ determined that Plaintiff could stand or walk for four hours and sit for six hours or more over the course of an eight-hour workday. (R. at 19.) The ALJ found that Plaintiff would need to change positions between sitting and standing at intervals of twenty to thirty minutes while staying on task. (R. at 19.) In the ALJ's estimation, Plaintiff could frequently climb ramps or stairs and balance, but could never climb ladders, ropes and scaffolds. (R. at 19.) And the ALJ found that Plaintiff could occasionally stoop, kneel, crouch, crawl and perform overhead reaching with her right upper extremity. (R. at 19.)

At step four, the ALJ found that Plaintiff could not perform any of her past relevant work. (R. at 22.) However, at step five, the ALJ determined that Plaintiff could perform jobs existing in significant numbers in the national economy. (R. at 23-24.) Therefore, the ALJ concluded that Plaintiff did not qualify as disabled under the Act. (R. at 23-24.)

## IV.    ANALYSIS

Plaintiff, fifty-six years old at the time of this Memorandum Opinion, previously worked as a restaurant owner/operator and a security officer. (R. at 57-58.) She applied for DIB, alleging disability from asthma, hyperesthesia allodynia, bursitis, musculoskeletal nerve damage, mental stress, depression and anxiety, with an alleged onset date of June 24, 2015. (R. at 76-77.)

Plaintiff's appeal to this Court alleges that the ALJ erred in: (1) failing to account for the extent

to which Plaintiff could perform her activities of daily living in discrediting Plaintiff's subjective

complaints of pain; and, (2) failing to consider Plaintiff's ability to sustain work-related

functions in crafting Plaintiff's RFC. (Pl.'s Br. at 4-6.) For the reasons set forth below, the ALJ

did not err in his decision.

> ### A.   The ALJ Properly Assessed the Credibility of Plaintiff's Subjective
> ### Complaints and Substantial Evidence Supports the ALJ's Assessment.

Plaintiff argues that the ALJ erred by failing to discuss the extent to which Plaintiff could

perform her activities of daily living in discrediting Plaintiff's subjective complaints. (Pl.'s Br.

at 4-6.) Specifically, Plaintiff argues that the ALJ did not "explain how these named activities

were inconsistent with plaintiff's testimony as to the effects of pain on her ability to perform

sustained work activity." (Pl.'s Br. at 6.)

Defendant responds that the ALJ properly considered Plaintiff's relevant activities.

(Def.'s Mot. Summ. J. & Br. Supp. Thereof ("Def.'s Br.") at 22.) Defendant points out that the

ALJ discussed the extent to which Plaintiff could drive, grocery shop, care for her personal needs

and cook. (Def.'s Br. at 22.) Defendant adds that the ALJ also considered Plaintiff's

conservative treatment and the objective medical evidence in discrediting Plaintiff's subjective

complaints, further supporting the ALJ's assessment. (Def.'s Br. at 24.)

After step three of the ALJ's sequential analysis, but before deciding whether a claimant

can perform past relevant work at step four, the ALJ must determine the claimant's RFC. 20

C.F.R. §§ 404.1520(e)-(f), 404.1545(a)(1). The RFC must incorporate impairments supported by

the objective medical evidence in the record and those impairments that are based on the

claimant's consistent complaints. As of March 28, 2016, ALJs must follow a revised two-step

analysis in reviewing a claimant's subjective complaints. 20 C.F.R. § 404.1529(a); SSR 16-3p,

2016 WL 1119029 (Mar. 16, 2016); *see also* SSR 16-3p, 2017 WL 5180304 (Oct. 25, 2017) (correcting terminology relating to applicable date); SSR 16-3p, 2016 WL 1237954 (Mar. 24, 2016) (correcting effective date to March 28, 2016). The first step requires the ALJ to determine whether there is an underlying medically determinable physical or mental impairment or impairments that reasonably could produce the claimant's pain or other related symptoms. SSR 16-3p, 2016 WL 1119029, at *3. If the underlying impairment reasonably could be expected to produce the claimant's pain or other symptoms, the second part of the analysis requires the ALJ to evaluate the claimant's "symptoms such as pain and determine the extent to which [the claimant's] symptoms limit his or her ability to perform work-related activities." *Id.* at *4.

The ALJ's step-two evaluation must first consider the consistency between a claimant's statements and the objective medical evidence. *Id.* at *5. Unless the ALJ can determine that a claimant qualifies as disabled based solely on objective medical evidence, the ALJ must also consider other sources of evidence to determine consistency, including "statements from the [claimant], medical sources, and any other sources that might have information about the [claimant's] symptoms." *Id.* at *5-7. Based on the degree of consistency between a claimant's statements and the evidence of record, the ALJ should find either a higher or lower likelihood that the claimant can perform work-related activities. *Id.* at *8.

Furthermore, it is well established that Plaintiff's subjective allegations of pain are not, alone, conclusive evidence that Plaintiff qualifies as disabled. *Mickles v. Shalala*, 29 F.3d 918, 919 (4th Cir. 1994). The Fourth Circuit has determined that "subjective claims of pain must be supported by objective medical evidence showing the existence of a medical impairment which could reasonably be expected to produce the actual pain, in the amount and degree, alleged by the claimant." *Craig*, 76 F.3d at 591.

Here, the ALJ found that Plaintiff's medically determinable impairments could reasonably be expected to cause her alleged symptoms, but that Plaintiff's statements regarding the intensity, persistence and limiting effects of those symptoms proved inconsistent with the evidence of record. (R. at 20.) Specifically, the ALJ pointed to the following inconsistencies: (1) inconsistencies between Plaintiff's admitted ability to perform tasks and her subjective complaints of pain; (2) inconsistencies between Plaintiff's physical examinations and Plaintiff's subjective complaints of pain; and (3) inconsistencies between Plaintiff's conservative treatment plan and her subjective complaints of pain. (R. at 21.) Upon review of the ALJ's decision and the record, the Court finds that the ALJ properly considered the consistency between the evidence of record and Plaintiff's subjective complaints, including the extent to which Plaintiff could perform her activities of daily living. Moreover, substantial evidence supports the ALJ's credibility assessment.

### 1.    *The ALJ Properly Considered the Extent to Which Plaintiff Performed Her Activities of Daily Living.*

In addressing daily activities, the ALJ must consider both the types of activities that a claimant can perform and the extent to which a claimant can perform them. *Woods v. Berryhill*, 888 F.3d 686, 694 (4th Cir. 2018). The ALJ satisfied both requirements here. (R. at 19-20.)

Indeed, the ALJ found that Plaintiff could drive, grocery shop, perform household chores, care for her personal needs and prepare meals, while also noting the extent to which Plaintiff could perform these activities. (R. at 19-20.) For example, the ALJ stated that Plaintiff could drive but only for short distances. (R. at 19.) The ALJ also acknowledged that Plaintiff could shop "if she takes breaks to rest," and Plaintiff could perform "*some* household chores" and "care for her personal needs *for the most part*." (R. at 19-20 (emphasis added).) Finally, the ALJ recognized that Plaintiff could make only "simple meals" for herself. (R. at 20.)

8

Clearly, the ALJ did not simply consider the types of activities that Plaintiff could perform, but also the extent to which she could perform them. Plaintiff fails to establish how the ALJ mischaracterized her activities of daily living, and the Court finds no error in the ALJ's characterization. Indeed, for each activity of daily living identified by the ALJ, the ALJ appropriately qualified his analysis with limitations on those activities, providing a legally sufficient assessment of Plaintiff's subjective complaints.

Moreover, substantial evidence in the record supports the ALJ's findings. During Plaintiff's testimony to the ALJ, Plaintiff affirmed that she could drive to the grocery store and shop, provided that she took breaks while walking down aisles. (R. at 49-50.) Plaintiff stated that she could sweep, mop, dust and prepare a meal over the course of several days. (R. at 62.) Additionally, Plaintiff's medical records indicate that Plaintiff could look after herself normally, albeit with some pain. (R. at 311, 317, 323, 329.) And Plaintiff could lift "light weights if conveniently positioned." (R. at 311, 317, 323, 329.) The ALJ accounted for these limitations to Plaintiff's activities of daily living in his assessment of Plaintiff's subjective complaints. Accordingly, the ALJ did not err.

### 2. The ALJ Also Properly Considered Plaintiff's Objective Medical Records in Assessing Her Subjective Complaints.

As part of the ALJ's creditability assessment, the ALJ also found that the objective medical evidence proved inconsistent with Plaintiff's subjective complaints of pain. (R. at 20-21.) Specifically, the ALJ noted that although Plaintiff exhibited an antalgic gait, right leg edema, diminished reflexes in both legs and seated motor issues, she did so only occasionally. (R. at 20.) Otherwise, the ALJ observed that Plaintiff "typically displayed full strength in all areas," which undermined her subjective complaints. (R. at 21.) The Court finds that the ALJ properly considered the objective medical evidence in discrediting Plaintiff's subjective

complaints. Moreover, substantial evidence supports the ALJ's assessment of Plaintiff's medical records.

Indeed, during multiple appointments with her treatment providers, Plaintiff displayed a normal gait. (R. at 242, 341, 344, 356, 458, 690.) Notably, in September 2015, Plaintiff's physician observed that Plaintiff's motor exam proved inconsistent with her claimed ability to stand and transfer positions. (R. at 263.) And although Plaintiff complained of diffuse pain and swelling of her legs, one of her physicians wrote that his "findings d[id] not indicate a recognizable radicular or dermatomal component nor any swelling." (R. at 263.) Moreover, during multiple appointments from 2015 and 2016, Plaintiff walked without any assistive devices, (R. at 312, 336, 341, 344, 391, 582), and Plaintiff also frequently exhibited no right leg edema, (R. at 312, 336, 341, 344, 451).

Together, these records provide substantial support for the ALJ's assessment that the objective medical records proved inconsistent with Plaintiff's subjective complaints of pain. Accordingly, the ALJ did not err.

### 3. The ALJ Also Properly Considered Plaintiff's Conservative Course of Treatment in Discrediting Her Subjective Complaints.

As part of the ALJ's creditability assessment, the ALJ found that Plaintiff's generally conservative medical treatment suggested that her "symptoms were not as severe or as limiting as she claims." (R. at 21.) Indeed, if a claimant requires only conservative treatment, an ALJ can reasonably hold that the alleged disability lacks the seriousness that the claimant alleges. *Dunn*, 607 F. App'x at 274. Because the record demonstrates that Plaintiff underwent a conservative course of treatment, the ALJ properly relied on that treatment to discredit Plaintiff's subjective complaints.

For example, at various times in 2015 and in 2016, physicians prescribed Plaintiff medications such as Gabapentin, Ibuprofen and home remedies (i.e., milk thistle, Vitamin D and Vitamin E). (R. at 430, 440.) During multiple appointments, Plaintiff identified heat and pain medications as helpful in relieving her pain. (R. at 336, 340, 344, 465.) Moreover, on November 4, 2015, Plaintiff's treating physician recommended that Plaintiff continue using home remedies (Epson soaks, oil rubs, etc.), because they proved helpful. (R. at 342.)

As for Plaintiff's back problems, a physician prescribed a brace to Plaintiff "to help support weak spinal muscles and to prevent further damage as well as pain" in September of 2016. (R. at 475.) Plaintiff indicated that the brace "improve[d] the pain level." (R. at 475.) And, during an appointment in early 2016, Plaintiff received a spinal injection. (R. at 330-33.)

Treatment providers also relied on compression stockings to treat Plaintiff's leg edema. (R. at 674.) And records from after Plaintiff's date last insured indicate that she continued to receive conservative treatment, including a referral for physical therapy and recommended home exercise. (R. at 573.) Importantly, at no time during the relevant period did Plaintiff's treating physicians recommend surgical intervention or other more extreme treatments.

Together, these records establish that Plaintiff underwent a largely conservative course of treatment consisting mostly of home remedies, pain medications and braces, which the ALJ could properly use to discredit Plaintiff's subjective complaints. Because the ALJ properly considered Plaintiff's daily activities and the extent to which she could perform them, the objective medical evidence in the record, and the evidence of Plaintiff's conservative treatment in making his creditability determination, and because substantial evidence in the record supports the ALJ's assessment, the Court finds no error.

**B.      The ALJ Considered Plaintiff's Relevant Functional Limitations and Substantial Evidence Supports the ALJ's RFC Findings.**

Plaintiff argues that the ALJ erred in failing to consider Plaintiff's ability to sustain work-related functions in crafting Plaintiff's RFC. (Pl.'s Br. at 4-6.) Specifically, Plaintiff argues that the ALJ failed to explain how the medical records supported the finding that Plaintiff "retained the capacity to perform sustained light work activity over a normal work week." (Pl.'s Br. at 5.) And Plaintiff contends that the ALJ did not identify her functional limitations per paragraphs (b), (c) and (d) of 20 C.F.R. § 404.145. (Pl.'s Br. at 6.) Defendant responds that the ALJ created an accurate and logical bridge between the evidence of record and Plaintiff's RFC. (Def.'s Br. at 18.) The Court agrees with Defendant.

As discussed above, before deciding whether a claimant can perform past relevant work at step four, the ALJ must determine the claimant's RFC. 20 C.F.R. §§ 404.1520(e)-(f), 404.1545(a)(1). In analyzing a claimant's abilities, the ALJ must first assess the nature and extent of the claimant's physical limitations and then determine the claimant's RFC for work activity on a regular and continuing basis. 20 C.F.R. § 404.1545(b). Generally, the claimant is responsible for providing the evidence that the ALJ utilizes in making her RFC determination; however, before determining that a claimant is not disabled, the ALJ must develop the claimant's complete medical history, including scheduling consultative examinations if necessary. § 404.1545(a)(3). The RFC must incorporate impairments supported by the objective medical evidence in the record, as well as those impairments that are based on the claimant's credible complaints. *Carter v. Astrue*, 2011 No. 3:10CV510, 2011 WL 2688975, at *3 (E.D. Va. June 23, 2011); *accord* § 404.1545(e).

Social Security Ruling 96-8p instructs that the RFC "assessment must first identify the individual's functional limitations or restrictions and assess his or her work-related abilities on a

function-by-function basis, including the functions listed in the regulations." *Mascio v. Colvin*, 780 F.3d 632, 636 (4th Cir. 2015) (citing SSR 96-8p). The Ruling further explains that the RFC "assessment must include a narrative discussion describing how the evidence supports each conclusion, citing specific medical facts (*e.g.*, laboratory findings) and nonmedical evidence (*e.g.*, daily activities, observations)." *Id.* (citing SSR 96-8p).

The ALJ's failure to conduct a function-by-function analysis does not necessarily result in automatic remand. The Fourth Circuit rejected a "per se rule requiring remand when the ALJ does not perform an explicit function-by-function analysis." *Mascio*, 780 F.3d at 636. Indeed, in light of *Mascio*, multiple district courts have found that in the absence of an explicit function-by-function analysis, the reviewing court must assess whether the ALJ's RFC analysis considered all relevant functions, whether the ALJ's explanation provides a sufficient basis to review his conclusions and, ultimately, whether the RFC is supported by substantial evidence in the record. *Daryl B. v. Saul*, 2020 WL 1471690, at *9 (E.D. Va. Mar. 26, 2020); *see also Ashby v. Colvin*, 2015 WL 1481625, *3 (S.D.W.Va. March 31, 2015) (holding that the ALJ did not conduct explicit function-by-function analysis of claimant's physical abilities, but sufficient evidence existed showing that the ALJ analyzed the relevant functions).

Here, the ALJ found that Plaintiff could perform light work with additional limitations. (R. at 19.) Specifically, the ALJ determined that Plaintiff could stand or walk for four hours and sit for six hours or more over the course of an eight-hour workday. (R. at 19.) The ALJ found that Plaintiff would need to change position between sitting or standing at intervals of twenty to thirty minutes while working on a task during the workday. (R. at 19.) In the ALJ's estimation, Plaintiff could frequently climb ramps/stairs and balance, but never climb ladders, ropes and scaffolds. (R. at 19.) The ALJ further found that Plaintiff could occasionally stoop, kneel,

13

crouch, crawl and perform overhead reaching with her right upper extremity.  (R. at 19.)  The

Court finds that the ALJ properly considered Plaintiff's relevant functions in crafting Plaintiff's

RFC and provided a narrative and substantially supported explanation that created a logical

bridge between the evidence of record and the RFC findings.  Accordingly, the ALJ did not err.

Indeed, although Plaintiff cites to paragraphs (b), (c) and (d) of 20 C.F.R.

§ 404.1545 to argue that the ALJ did not consider all of Plaintiff's functional limitations,

Plaintiff fails to identify any specific or additional relevant functions that the ALJ should have

considered.  (Pl.'s Br. at 5-6.)  Instead, Plaintiff focuses on the ALJ's failure to consider

Plaintiff's ability to perform the functions identified on a sustained basis.  (Pl.'s Br. at 5-6.)

Even then, Plaintiff also fails to identify additional evidence in the record beyond her activities

of daily living that demonstrates that the ALJ failed to properly consider her ability to perform

work on a sustained basis.  (Pl.'s Br. at 5.)  As mentioned, the ALJ adequately considered the

extent to which Plaintiff could perform her activities of daily living in his RFC analysis, and the

Court finds no other evidence that would suggest that the ALJ improperly ignored Plaintiff's

ability to sustain her work-related functions.

Rather, the Court's review of the ALJ's opinion and the evidence of record reveals that

the ALJ considered Plaintiff's relevant functions and the extent to which she could sustain them.

(R. at 19-22.)  For one, the ALJ began by listing his conclusions regarding Plaintiff's RFC,

function-by-function.  (R. at 19.)  Specifically, the ALJ concluded that Plaintiff could perform

the following functions with some limitations:  standing for periods of time, sitting for periods of

time, climbing ramps, ascending stairs, balancing, stooping, kneeling, crouching, crawling and

reaching overhead.  (R. at 19.)  These functions are consistent with the physical functions

identified in 20 C.F.R. § 404.1545(b).

Importantly, to support his findings regarding Plaintiff's relevant functions, the ALJ cited to evidence in the record. (R. at 19-22.) First, the ALJ addressed Plaintiff's right leg pain. (R. at 19.) The ALJ noted that Plaintiff had normal electromyography ("EMG") results, with no suggestion of neuropathic features and a negative Doppler study for deep vein thrombosis.[4] (R. at 20.) The ALJ also cited to Plaintiff's September 2015 motor exam, which proved inconsistent with her claimed ability to stand and transfer positions. (R. at 20.) Nonetheless, the ALJ recognized that Plaintiff received regular treatment for pain, swelling and weakness in her right leg and that, ultimately, Plaintiff's leg pain required her to alternate between standing and sitting positions throughout the day. (R. at 20.)

Indeed, the record indicates that Plaintiff received a series of hormone injections between March and July 2015. (R. at 228, 234.) Following the hormone injections, Plaintiff reported swelling and numbness in her right leg. (R. at 240.) A subsequent EMG of Plaintiff's right leg in September 2015 proved normal, "without evidence to suggest acute denervation or chronic reinnervation features or myopathic potentials." (R. at 255.) Moreover, as the ALJ noted, Plaintiff's seated motor exam proved inconsistent with her claimed ability to stand and transfer positions. (R. at 263.) Nevertheless, Plaintiff reported continued pain and swelling. (R. at 263.) Together, these records support the ALJ's conclusion that Plaintiff could sustain work functions so long as she could switch between sitting and standing at regular intervals.

As for Plaintiff's back pain, the ALJ acknowledged that Plaintiff received regular treatment for her back that included pain medication, a back brace and physical therapy — conservative treatment that the record supports. (R. at 20; *see* R. at 342 (recommending home

---

[4]      An electromyography exam uses electrical signals to record the functioning of the nerve-to-muscle signals in the body. *Electromyography*, Dorland's Illustrated Medical Dictionary (32d ed. 2012).

remedies for Plaintiff's back pain), 475 (prescribing a back brace to Plaintiff, which Plaintiff indicated helped her pain).)  And the ALJ observed that Plaintiff declined to use a recommended spinal cord stimulator.  (R. at 20.)  Based on Plaintiff's treatment, her continued reports of back pain and clinical findings showing that Plaintiff suffered from decreased mobility and tenderness in her lumbar region, the ALJ limited Plaintiff's postural and exertional functions.  (R. at 20.)

The ALJ also accounted for Plaintiff's right-shoulder pain.  (R. at 20.)  Specifically, the ALJ acknowledged that at times Plaintiff had a limited range of motion in her right shoulder and concluded that Plaintiff experienced some limitations in reaching overhead with her right upper extremity.  (R. at 20-21.)  Indeed, Plaintiff exhibited a limited range of motion in her right shoulder on examination, which Plaintiff's physician treated with a topical patch, physical therapy and recommended shoulder exercises.  (R. at 572-74.)  Notably, during her hearing, Plaintiff could raise her right arm with her hand resting "about even with the top of her head." (Pl.'s Oral Test. at 23.)[5]  Considering Plaintiff's conservative treatment and her demonstrated ability to move her right arm overhead at least some of the time, the Court finds that the ALJ properly accounted for Plaintiff's right shoulder pain in crafting Plaintiff's RFC.

Finally, the ALJ accounted for Plaintiff's obesity.  (R. at 21.)  The ALJ opined that Plaintiff's BMI contributed to and exacerbated her other symptoms and generally contributed to her physical limitations.  (R. at 21.)  Indeed, a review of the record confirms that Plaintiff had a BMI of more than thirty throughout her treatment.  (R. at 323, 329, 335, 347, 579.)  And as part of her treatment plan, a physician advised Plaintiff to increase her physical activity.  (R. at 337.)

---

[5]     Although not part of the main record, this citation comes from the supplement to the administrative record that was certified and submitted on June 14, 2019.  Accordingly, the Court cites to the supplemental record as part of the evidence before the ALJ.

Undoubtedly, the ALJ identified Plaintiff's relevant functional limitations and provided a narrative explanation that connected the evidence of record with his RFC findings. (R. at 19-22.) Importantly, substantial evidence supports the ALJ's conclusions, and Plaintiff fails to identify any evidence that the ALJ improperly ignored. Accordingly, the ALJ did not err.

## V.   CONCLUSION

For the reasons set forth above, the Court DENIES Plaintiff's Motion for Summary Judgment (ECF No. 11), GRANTS Defendant's Motion for Summary Judgment (ECF No. 12) and AFFIRMS the final decision of the Commissioner. An appropriate order will issue.

Let the Clerk file a copy of this Memorandum Opinion electronically and notify all counsel of record.

_____/s/_____

David J. Novak
United States District Judge

Richmond, Virginia
Date: August 26, 2020

17